517 So.2d 333 (1987)
Bennie SIMMONS
v.
HOPE CONTRACTORS, INC., et al.
No. CA 86 1305.
Court of Appeal of Louisiana, First Circuit.
November 10, 1987.
Writ Denied January 8, 1988.
*334 Jacque B. Pucheu, Jr., Eunice, Joe Payne Williams, Natchitoches, for Bennie Simmons and Elizabeth Ann Cobb Simmons.
Robert L. Picou, Jr., Houma, for Hope Contractors, Inc. and Reliance Ins. Co.
Michael McGinnis, New Orleans, for Odeco, Inc.
*335 Before LANIER, CRAIN and LeBLANC, JJ.
LeBLANC, Judge.
Plaintiff, Bennie Simmons, injured his back while working on an offshore platform in the Gulf of Mexico. Mr. Simmons, a member of the crew of a lift barge called Southern Cross # 1, filed suit in the district court against Hope Contractors, Inc., his employer; Reliance Insurance Co. of Illinois, Hope Contractor's insurer; and ODECO, Inc., the owner of the platform. Mr. Simmons filed this suit under the Jones Act, 46 U.S.C. § 688, and general maritime law seeking damages for personal injury, maintenance and cure, and punitive damages for failure to pay maintenance and cure. His wife, Ann Cobb Simmons, sought damages for loss of consortium.
The jury found that Mr. Simmons was a seaman but that Hope Contractors and its employee, Steven Bennett, were not guilty of negligence. The jury determined that Mr. Simmons was entitled to $12,000.00 for disability; $25,000.00 for past and future loss of wages; and $7,500.00 for medical expenses. The jury also found that Southern Cross # 1 was not unseaworthy. The jury determined that Mr. Simmons was entitled to an award for maintenance in the amount of $15.00 per day from December 8, 1982 to August 9, 1983. The jury also found that Mr. Simmons was entitled to an award for cure in the amount of $2,600.00. The jury found that neither Hope Contractors nor Reliance Insurance Co. paid maintenance and cure to Mr. Simmons and that this failure was so callous, arbitrary and capricious so as to entitle Mr. Simmons to an award of punitive damages in the amount of $25,000.00. The jury rejected Mrs. Simmons' claim for loss of consortium.
The trial judge awarded a judgment in favor of Mr. Simmons and against Hope Contractors and Reliance Insurance Co. in the sum of $6,260.00, this amount representing maintenance and cure, and the sum of $25,000.00 for punitive damages. The trial judge did not render a judgment based on the jury's finding that plaintiff was entitled to damages for disability, loss of wages and medical expenses because this finding was inconsistent with the jury's finding that Hope Contractors was not negligent.
Both parties appealed from this judgment. Defendant, Hope Contractors, argues that the trial court committed manifest error in assessing punitive damages against Hope Contractors. Plaintiff argues that punitive damages should be increased to $100,000.00. In respect to the jury's finding of no negligence, plaintiff contends that no weight can be given to the trial court's judgment which implemented the jury verdict because the trial court refused to give a requested jury instruction which was based on an essential and correct legal principle and because the court refused to allow plaintiff to question a witness on recross-examination. In the alternative, plaintiff argues that the jury decision that Hope Contractors and its employee, Steven Bennett, were not guilty of the slightest negligence is manifestly erroneous and that no reasonable juror could have concluded that Steve Bennett was not negligent. Plaintiff further argues that the award of maintenance should be increased to $18,975.00 and the award of cure should be increased to $10,425.98.
On December 2, 1982, Mr. Simmons, who was employed by Hope Contractors, as a welder's helper, was assisting Steven Bennett, another employee of Hope Contractors, in lifting a sheet of steel grating. According to Mr. Simmons' testimony, Steven Bennett dropped his end of the grating while the two men were lifting one end of the grating. Mr. Simmons could not free his hands from the grating and the weight of the grating caused his arms to be jerked down as the grating fell down to Mr. Simmons' feet. Mr. Simmons completed his work shift on that day and the following two days. He experienced pain in his back the day after the accident but he did not report the accident until December 5, 1982. On that day, Mr. Simmons was taken to Terrebonne General Hospital where he was examined by Leslie T. Walker, M.D. Dr. Walker diagnosed a lumbosacral strain, a straining injury to the lower back, and advised *336 Mr. Simmons to remain on light duty at work for four to five days. Mr. Simmons worked for two days to finish his work assignment. On December 14, 1982, Dr. Walker released Mr. Simmons. Mr. Simmons testified that although his back was still hurting, he needed to return to work so he asked Dr. Walker to release him. No limitations were placed on his activity. The following day, December 15, 1982, when Mr. Simmons reported to work, he was told by Hope Contractor's personnel manager that there was no work. Mr. Simmons received a discharge notice from Hope Contractors on December 17, 1982.
However, Mr. Simmons' back pain continued. He sought further medical attention. He was first examined by Dr. Baer Rambach, a specialist in the field of orthopedic surgery, on January 24, 1983. On this date, Dr. Rambach diagnosed myoligamentous strains afflicting the lumbosacral spine. He advised Mr. Simmons to moderate his activities and recommended some postural exercises. He also prescribed physical therapy. Thereafter, Dr. Rambach examined Mr. Simmons about once a month. Mr. Simmons continued to complain of pain and muscle spasms in his back. Dr. Rambach did not discover any objective findings which would have explained Mr. Simmons' pain. Dr. Rambach recommended continued physical therapy and the use of a TENS unit, a device which is worn by the patient and is designed to short-circuit nerve impulses to help relieve pain. On August 9, 1983, Mr. Simmons returned to Dr. Rambach. Although Mr. Simmons still complained of soreness in the lower back, Dr. Rambach released Mr. Simmons to return to work and assigned a ten percent permanent physical disability of his spine as applied to the body as a whole. After being released by Dr. Rambach, Mr. Simmons worked for two automotive shops performing light mechanic work. Mr. Simmons continued to experience pain in his back. In January of 1985, his pain became more severe and he returned to Dr. Rambach. An x-ray examination revealed narrowing of the disc space and some degeneration of the disc in the area where the musculoligamentous injury had been diagnosed in January of 1983. Dr. Rambach prescribed a back brace to help control the pain. In March of 1985, Dr. Rambach performed a spinal fusion surgery on Mr. Simmons. Mr. Simmons wore a back brace until August of 1985. In October of 1985, Dr. Rambach assigned a twenty-five percent (25%) permanent-partial physical disability of the lower back or the lumbar spine as applied to the body as a whole. Dr. Rambach informed Mr. Simmons that he would not be able to return to heavy physical work because of this permanent disability. Mr. Simmons returned to Dr. Rambach complaining of back pain every two to eight weeks until the date of trial, May 19, 1986.
The first issue to be addressed is whether the trial court erred in awarding punitive damages against Hope Contractors. Since punitive damages are recoverable under the general maritime law, the Louisiana standard of appellate review applies to this issue. See Daigle v. Coastal Marine, Inc., 488 So.2d 679 (La.1986). Therefore, in order to reverse the jury's finding on this issue, we must find that it is clearly wrong. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
Punitive damages are recoverable for acts which are willful, wanton and in callous disregard of a claim for maintenance and cure. The conduct required to grant an award of punitive damages requires an element of bad faith. Harper v. Zapata Off-Shore Co., 741 F.2d 87 (5th Cir.1984).
Defendant, Hope Contractors, contends that the jury's finding is clearly wrong because the record does not establish that Hope Contractors acted in bad faith. Defendant argues that it paid Mr. Simmons' medical expenses incurred for his first medical examination after the accident. Less than two weeks after the accident, plaintiff requested a release slip from Dr. Walker in order to return to work. Furthermore, after he was discharged by Hope, he qualified himself for and collected unemployment benefits, thereby certifying himself as physically capable of working.
*337 Therefore, Hope contends that it had no reason to believe that Mr. Simmons' injury caused him to incur any further expenses until it was served with plaintiff's original damages suit[1] on July 21, 1983. Based on these facts, Hope contends that it did not act in a manner which could be classified as callous, arbitrary and capricious.
We disagree. The parties stipulated that defendant received copies of Dr. Rambach's medical reports, dated from January 24, 1983 to August 9, 1983, on October 18, 1984. Plaintiff made demand for maintenance and cure benefits in his First Supplemental and Amending Petition which was filed on November 30, 1984. Defendant did not make any attempt to investigate plaintiff's medical condition at this time. Defendant failed to have a second medical opinion conducted by a physician of its choice until less than one week before trial in May of 1986. Defendant made no maintenance and cure payments to plaintiff except for the payment of medical expenses incurred for plaintiff's first medical examination after the accident. We find that the jury was not clearly wrong in characterizing defendant's failure to pay maintenance and cure benefits as callous, arbitrary and capricious. Since defendants made no attempt to investigate plaintiff's claim until a few days before the trial of this matter, defendant did not have information to lead it to believe that a good faith question of fact existed concerning the extent and causal relationship of plaintiff's injury to provide defendant with a reasonable and adequate justification to refuse payment of maintenance and cure benefits. See Vaughan v. Atkinson, 369 U.S. 527, 82 S.Ct. 997, 8 L.Ed.2d 88 (1962). Also see Hodges v. Keystone Shipping Co., 578 F.Supp. 620 (S.D.Tex.1983).
Plaintiff argues that the amount of the punitive damage award should be increased to $100,000.00. Punitive damages are intended to penalize the defendant for wilful misconduct and to deter similar conduct in the future. However, punitive damages should not go beyond deterrence and become a windfall. Lenard v. Argento, 699 F.2d 874 (7th Cir.), cert. denied, 464 U.S. 815, 104 S.Ct. 69, 78 L.Ed.2d 84 (1983). We find that the $25,000.00 punitive damages award was within the broad discretion of the jury. We cannot say that this finding was manifestly erroneous.
Plaintiff also argues that the trial court erred in refusing to instruct the jury regarding La.R.S. 15:440 which provides that positive testimony on a given point must be given greater weight than negative testimony on the same point. Plaintiff contends that this statute applies to the facts of this case because Mr. Simmons' testimony, describing how the accident occurred, was positive testimony and Mr. Bennett's testimony, which established that he did not remember the accident, was negative testimony. Therefore, plaintiff argues that since the court failed to give this pertinent instruction, this court should not give any weight to the judgment of the trial court which implemented the jury's finding that Hope Contractors and Steven Bennett were not negligent.
In a jury trial, the judge is not required to give the precise instructions submitted by either party but must give instructions which properly reflect the law applicable in light of the facts of the particular case. Barnett v. New Orleans Public Service Inc., 489 So.2d 452 (La.App.4th Cir. 1986). The standard of appellate review is that the mere discovery of an error in the trial judge's instruction does not itself justify the appellate court conducting the equivalent of a trial de novo, without first measuring the gravity or degree of error and considering the instructions as a whole and the circumstances of the case. Lincecum v. Missouri Pacific R. Co., 452 So.2d 1182 (La.App. 1st Cir.), writ denied, 458 So.2d 476 (La.1984).
If our examination reveals that the jury charges were either so incorrect or inadequate *338 as to preclude the jury reaching a verdict in accordance with the law and facts, we must render a judgment on the record as if we had the case before us for a trial de novo. Laborde v. Velsicol Chemical Corp., 474 So.2d 1320 (La.App. 3d Cir. 1985), writ denied, 480 So.2d 738 (La.1986).
Regarding the question of whether the alleged accident occurred, La.R.S. 15:440 is pertinent. Plaintiff testified that the accident did occur. His co-worker testified that he had no recollection of the accident. Therefore, the trial judge should have instructed the jury regarding this statute. However, this error was harmless. The award of maintenance and cure to plaintiff is evidence that the jury believed plaintiff's testimony that the accident did occur. Therefore, the jury's finding of no negligence was also based on a determination that the accident did take place. Plaintiff would not have benefited from an instruction based on La.R.S. 15:440, because it is clear that the jury believed the accident occurred. Since the jury was instructed regarding general negligence principles, we cannot find that the instructions as a whole precluded the jury from reaching a verdict in accordance with the relevant law and facts.
Plaintiff also contends that the trial court's judgment should not be given any weight by this court because the trial court erred by refusing to allow plaintiff to question Mr. Bennett on recross-examination. Plaintiff had cross-examined Mr. Bennett during his case-in-chief under La.Code Civ. P. art. 1634, defendant conducted his direct-examination of Mr. Bennett and then the court refused to allow plaintiff to further cross-examine Mr. Bennett.
However, since the plaintiff failed to proffer the evidence (cross-examination) in question, this obligation has been waived (not properly preserved) for appellate review. La.Code Civ.P. art. 1636; McLean v. Hunter, 495 So.2d 1298 (La.1986).
Plaintiff's next assignment of error is that the jury decision that Hope Contractors and Steven Bennett were not guilty of the slightest negligence is manifestly erroneous and that no reasonable juror could have concluded that Steven Bennett and Hope Contractors were not negligent.
The standard of review in state court on Jones Act claims is governed by federal law and jurisprudence. The jury's findings of fact cannot be disturbed by an appellate court unless there is no reasonable evidentiary basis for the jury's conclusion. Trahan v. Gulf Crews, Inc., 260 La. 29, 255 So.2d 63 (1971); Daigle v. Coastal Marine Inc., 488 So.2d 679 at 681, n. 3 (La.1986).
Plaintiff cites McInnis v. Fireman's Fund Insurance Company, 322 So.2d 155 (La.1975) in support of his proposition that Mr. Bennett acted negligently in dropping the piece of grating. In McInnis, the defendant attempted to lift a concrete troweling machine, weighing approximately 285 pounds, in order to load the machine onto his truck. While lifting the machine, it slipped out of defendant's hands and fell on plaintiff's foot. The court found the defendant's attempt to lift the heavy and extremely awkward piece of machinery without help constituted negligence.
The present case is distinquishable from McInnis. The defendant in McInnis acted unreasonably in attempting to lift the heavy and awkward machinery without assistance. However, in the present case, the record establishes that the job of lifting the grating was regularly and safely performed by two men. Therefore, Mr. Bennett's action of attempting to lift the grating was not unreasonable. Furthermore, the record does not establish that either Hope Contractors or Mr. Bennett failed to take any safeguards required to perform the job in a safe manner. We find that there is a reasonable evidentiary basis for the jury's finding that Hope Contractors and Mr. Bennett were not negligent.
Plaintiff further contends that the amount of maintenance and cure awarded by the trial court is clearly erroneous. Based on the jury's findings, the trial court awarded maintenance in the amount of $15.00 per day from December 8, 1982, the first day that plaintiff did not work after the accident, to August 9, 1983, the date *339 when Dr. Rambach originally released plaintiff to return to work. Plaintiff argues he should have been awarded maintenance for each day starting with the date of the accident, December 2, 1982, and that he did not reach his maximum cure until May 20, 1986. Therefore, he contends that the maintenance award should have been $15.00 per day from December 2, 1982, to May 20, 1986, which amounts to $18,975.00. Plaintiff also argues that the trial court's award of $2,600.00 for cure is clearly erroneous. He claims that the award of cure should include all medical expenses incurred by plaintiff from December 2, 1982 through May 20, 1986, which amounts to $10,425.98.
The right to recover maintenance and cure is a right granted by the general maritime law. Therefore, the Louisiana standard of appellate review applies to this issue. See Daigle, supra. We must determine if the awards for maintenance and cure are clearly wrong.
We find that plaintiff has not established that he incurred maintenance expenses from December 1, 1982 through December 7, 1982. Plaintiff continued to work for Hope Contractors during this period of time and there is no evidence that Hope Contractors did not provide his food and lodging on these dates. The record also establishes that the medical expenses incurred by plaintiff during this time period were paid by Hope Contractors. Therefore, the jury was correct in finding that plaintiff was entitled to maintenance and cure expenses starting on December 8, 1982.
We must determine next when plaintiff reached his maximum cure. Maximum cure is achieved when it is probable that further treatment will result in no betterment of the seaman's condition. Calmar S.S. Corporation v. Taylor, 303 U.S. 525, 58 S.Ct. 651, 82 L.Ed. 993 (1938). Springborn v. American Commercial Barge Lines, Inc., 767 F.2d 89 (5th Cir. 1985). Where it appears that the condition is incurable or that further treatment will merely relieve pain and suffering and not otherwise improve the physical condition, it is proper to declare the point of maximum cure. Pelotto v. L & N Towing Co., 604 F.2d 396 (5th Cir.1979).
We find that the jury was not clearly wrong in finding that plaintiff reached his maximum cure as of August 9, 1983. Dr. Rambach assigned a ten percent (10%) permanent physical disability of the spine as applied to the body as a whole on August 9, 1983, and released Mr. Simmons to return to work with no limitations placed on his activity. The spinal fusion surgery was performed in March of 1985 in order to alleviate the continuing back pain by strengthening the spine. However, plaintiff's back pain continued after this date. Dr. Rambach assigned a twenty-five percent (25%) permanent-partial physical disability of the lower back as applied to the body as a whole in October of 1985. He was advised that he should not return to any heavy physical work. Dr. Rambach testified that plaintiff will have a continuous problem with his back. Dr. Rambach also stated that he did not think plaintiff's physical condition was better after the surgery on May 5, 1986, than it was on August 9, 1983.
Plaintiff has a right to maintenance and cure from December 8, 1982, to August 9, 1983. Therefore, the trial court's award of maintenance in the amount of $3,660.00 is correct. The award of cure for $2,600.00 exceeds the expenses incurred by plaintiff between December 8, 1982 and August 9, 1983, which were established in the record. Therefore, we find that the award is not clearly wrong.
The judgment of the trial court is affirmed.
Fifteen (15%) percent of the costs of this appeal are to be paid by plaintiff. Eighty-five (85%) percent of the costs of this appeal are to be paid by defendants.
AFFIRMED.
NOTES
[1] The record of the original suit for damages has not been introduced in the record of this case. Neither has there been any testimony regarding the specific claims of the original suit for damages. Therefore, we cannot determine whether this suit included a claim for maintenance and cure.