563 So.2d 954 (1990)
George P. BERGERON, Jr.
v.
MAIN IRON WORKS, INC. and Offshore Express, Inc.
CA 89 0660.
Court of Appeal of Louisiana, First Circuit.
May 30, 1990.
Rehearing Denied July 30, 1990.
*955 Darryl J. Tschirn, Metairie, for plaintiff and appellant George P. Bergeron, Jr.
Joseph A. Reilly, Jr., Houma, for defendant and appellant Offshore Express, Inc.
Morgan Wells, Metairie, for intervenor, Main Iron Works, Inc.
*956 Miles P. Clements, New Orleans, amicus curiaeOMSA Offshore Marine Service Ass'n.
Before EDWARDS, LANIER and FOIL, JJ.
FOIL, Judge.
In this negligence action against a vessel owner, we are asked to review the action of the trial court in granting in part, and denying in part, a motion for a judgment notwithstanding the verdict following a jury trial. We hold that the trial court erred in refusing to grant the JNOV on the issue of liability, and reverse.
Plaintiff, George Bergeron, Jr., was injured on March 26, 1986, when he slipped and fell in a cargo fuel tank while carrying out repair operations aboard the M/V Green Canyon Express. He filed this lawsuit against his employer, Main Iron Works, Inc. and Offshore Express, Inc., the owner of the vessel, seeking damages under the Jones Act and under the Longshore and Harbor Workers' Compensation Act (LHWCA). Plaintiff later dismissed Main Iron Works from the suit. Reliance Insurance Company, Main Iron Works' compensation carrier, intervened in the suit, seeking reimbursement for compensation benefits and medical expenses it paid to and on behalf of Bergeron under the LHWCA.
Offshore Express filed a motion for summary judgment on the issue of liability, which was denied by the trial court, and the case was tried before a jury. At the close of plaintiff's evidence, defendant moved for a directed verdict, which was denied by the trial court. At the conclusion of the evidence, the jury found defendant liable to plaintiff, concluding it was 100% at fault in causing plaintiff's injuries. The jury itemized plaintiff's damages, awarding him over $700,000.00, and the trial court entered judgment in accordance with the verdict. Thereafter, defendant filed a motion for JNOV, contesting the jury's liability finding, its failure to find plaintiff at fault in causing the injury, as well as its awards for medical expenses and future wages. It also filed motions for a new trial and in the alternative, a remittitur. The trial court denied the motion for JNOV on the issue of the defendant's liability, but granted it on the remaining issues, finding plaintiff 25% at fault in causing his injuries, and lowering the awards for medical expenses and future wages. The trial court denied the other motions, and entered judgment in accordance with its rulings. In addition, the trial court reduced the amount to which the compensation carrier was entitled by the percentage of fault attributed to plaintiff.
This appeal, taken by all parties in this litigation, followed. Defendants appeal the failure of the trial court to enter a JNOV on the issue of its liability. Plaintiff appeals the trial court's granting of the JNOV in all respects. Finally, Reliance appeals the reduction of its reimbursement award. We hold that the trial court erred in failing to grant the JNOV on the issue of liability, and therefore pretermit discussion of all other issues raised in this appeal.

JNOV
In ruling on a motion for JNOV under La.Code Civ.P. art. 1811, the trial court is required to employ the following legal standard: A JNOV should only be granted if the trial court, after considering all of the evidence in the light most favorable to the party opposed to the motion, finds it points so strongly and overwhelmingly in favor of the moving party that reasonable persons could not arrive at a contrary verdict on the issue. However, if there is substantial evidence of such quality and weight that reasonable persons might reach different conclusions, the motion must be denied. Boeing Company v. Shipman, 411 F.2d 365, 374 (5th Cir.1969); Cosie v. Aetna Casualty & Surety Insurance Co., 527 So.2d 1105, 1107 (La.App. 1st Cir.1988); Robertson v. Penn, 472 So.2d 927, 929 (La.App. 1st Cir.), writ denied, 476 So.2d 353 (La.1985). On appeal, the findings of the jury are reviewed under this standard. Woods v. Sammisa Company, Ltd., 873 F.2d 842, 846 (5th Cir.1989), cert. denied, ___ U.S. ___, 110 S.Ct. 853, 107 L.Ed.2d 847 (1990). The trial judge's action in granting a JNOV, thereby altering the *957 factual finding of the jury, is governed by the manifest error or abuse of discretion standards. See Cosie v. Aetna Casualty & Surety Insurance Co., 527 So.2d at 1107 (employing a manifest error test); Robinson v. Bump, 894 F.2d 758 (5th Cir.1990) (employing an abuse of discretion test).

LIABILITY OF THE VESSEL OWNER
Because plaintiff is an employee covered under the LHWCA, his exclusive remedy for personal injury against the owner of the vessel is a negligence action. 33 U.S.C. § 905(b). In order to establish vessel negligence, the plaintiff must prove that the vessel owner violated or breached a duty owed to him. Lormand v. Superior Oil Company, 845 F.2d 536, 541 (5th Cir.1987), cert. denied, 484 U.S. 1031, 108 S.Ct. 739, 98 L.Ed.2d 774 (1988).
The responsibility of a ship owner to the employees of a ship repairer under the LHWCA is well defined in the federal jurisprudence. In Scindia Steam Navigation Co., Ltd. v. De Los Santos, 451 U.S. 156, 101 S.Ct. 1614, 68 L.Ed.2d 1 (1981), the Supreme Court delineated the scope of respective duties owed to a longshoreman by the vessel owner and stevedore under 33 U.S.C. § 905(b). The three principles, articulated in Scindia, have been extended to govern the respective duties of a shipowner and a ship repairer to an injured employee of the ship repairer. See Hill v. Texaco, Inc., 674 F.2d 447 (5th Cir.1982). In Hill, the Fifth Circuit summarized these principles as follows:
... First, before the stevedore begins his work, a shipowner must exercise care to make safe the portions of the ship that it turns over to the stevedore. In discharging this duty the ship may rely on the stevedore's performing its task with reasonable care. The shipowner must also warn the stevedore of hidden unsafe conditions on the ship of which the ship is, or should be, aware.
Second, once the stevedore begins its operations, the shipowner has no general duty to supervise work or to inspect the area assigned to the stevedore, unless custom, contract, or law imposes such a duty on the shipowner. The shipowner need not monitor the stevedore's operations; rather, the shipowner is entitled to rely on the stevedore's expertise and reasonableness.
Third, the Supreme Court made an exception to the general absence of a duty of the shipowner to protect employees of the stevedore during cargo operations. The duty arises when two conditions are fulfilled. If the shipowner becomes aware during the stevedore's work that the ship or its gear poses a danger to the longshoremen, and if the shipowner also learns that the stevedore is acting unreasonably in failing to protect the longshoremen against the danger, then the shipowner acquires a duty to intervene and protect the longshoremen. The shipowner can have knowledge of a defect if the defect develops during the stevedore's operations and the shipowner has actual knowledge, or if the defect exists at the outset and the ship "must be deemed" to have knowledge of it. [Citations and footnotes omitted] 674 F.2d at 451.
In Randolph v. Laeisz, 896 F.2d 964 (5th Cir.1990), the court stated that two tenets underlie the distribution of the respective duties of the vessel owner and the stevedore to the employees of the stevedore. First, the shipowner may rely on the stevedore to avoid exposing the longshoremen to unreasonable hazards, and second, the vessel owner owes to the stevedore and his longshoremen employees the duty to exercise reasonable care under the circumstances. The court stressed that the "basic principle which emerges from Scindia is that the primary responsibility for the safety of the longshoremen rests upon the stevedore. "Id. at 970.
With these precepts in mind, we now review the evidence presented at trial. While an employee of Main Iron Works, a ship repair yard, plaintiff was injured when he slipped and fell in the cargo fuel tank aboard the M/V Green Canyon Express during repair operations. Defendant, Offshore Express is the owner of the vessel. The Green Canyon Express is an offshore *958 supply vessel designed principally to transport supplies to offshore production and drilling facilities. By design, the vessel contains numerous storage tanks below the deck, including among others, a liquid mud tank, a dry bulk cement tank, and a diesel fuel cargo tank. A manhole and a stationary ladder provide entrance into and egress from the cargo fuel tank. The cargo fuel tank has a sloped, inclined floor made of smooth steel.
In late March of 1986, the vessel struck a submerged pipeline, causing damage to its hull. The vessel was taken to Main Iron Works where it was dry docked to determine the extent of the damage and the requisite repairs.
While at the repair facility, an Offshore Express representative and a Main Iron Works foreman surveyed the damage and determined that there was damage to the bottom shell plating of the diesel fuel cargo tank. Because this repair operation would necessitate actually entering the cargo fuel tank and cutting out and replacing the damaged plate, Main Iron Works first had to "gas-free" the fuel tank.
Various witnesses testified regarding the gas-freeing process. This process, performed by the ship repairer, is required in order to perform "hot work," such as welding and cutting with a torch in a fuel tank, and entails ridding the tank of all gas and gas vapors. Essentially, after draining the tank, a Main Iron Works cleaning crew would enter and wash it down with degreaser and detergent. They would then pump all the water out, allow it to dry and contact a marine chemist, who would inspect the tank and, if no vapors were present, would issue a Gas Free Marine Certificate stating that the tank was safe to do hot work.
After Main Iron Works gas-freed the Green Canyon Express on March 24 and 25, 1986, it was issued the requisite certificate and commenced repair operations. On the evening of March 26, plaintiff, a 37 year-old ship fitter, was assigned to repair the damage to the shell of the fuel tank. After entering the cargo fuel tank, a fellow employee handed plaintiff a light and torch. He then proceeded to traverse down the sloped floor. He testified that he was able to grasp onto holes in splash bulkheads to assist in this journey, but ultimately came to a point where he could not reach the next bulkhead. At that point, he continued to walk down the incline, and slipped, falling to the floor. He then began sliding down the incline, and jammed his foot into a pipe approximately eight feet from that point. His upper body was thrown forward on impact, and plaintiff suffered extensive injuries to his knee as a result.
Plaintiff's theory of liability at trial was that the shipowner was negligent for not installing safety devices in the cargo fuel tank to protect against the danger of slipping, including handrails, grated flooring, and nonskid tape or paint. Obviously, the jury agreed. The trial court, in ruling on the JNOV, found that reasonable minds could differ on the question of the shipowner's responsibility. We disagree.
Plaintiff contends there was sufficient evidence for the jury to conclude the shipowner was negligent. Specifically, he argues that the shipowner was aware of the slipping hazard in the cargo fuel tank. This is borne out by the evidence. However, the evidence established that it is common knowledge to everyone involved in the shipping and ship repair industry that cargo fuel tanks are slippery environments. The vice president of Offshore Express stated his awareness of this danger. Further, all of the Main Iron Works employees who testified stated that it is impossible to make a diesel fuel tank a slip-free environment. Ferrel Carlos, a foreman in Main Iron Works' employ, stated that even after the gas-freeing process is complete, there is a film of moisture, or oil residue on the surface of the floor, creating the danger of slipping in the tank. Plaintiff testified he was aware of this danger, and had indeed slipped on many occasions inside cargo tanks.
Given that both the shipowner and the ship repairer knew of the slipping hazard, the legal issue at trial was who bore the primary responsibility to take proper precautions to protect against the *959 risk of the ship repairer's employee slipping in the tank while undertaking repair operations. In other words, was Offshore Express negligent for failing to install safety devices to protect against the slipping hazard, or did it act reasonably in relying on Main Iron Works to protect its employees from this danger? The cases establish that the mere fact that a dangerous condition is open and obvious to the ship repairer or stevedore will not automatically immunize the shipowner from liability for injuries sustained as a result of encountering that hazard. Woods v. Sammisa Company, Ltd., 873 F.2d at 854. The shipowner may be liable for failing to provide a safe work place if it cannot reasonably rely on the ship repairer to take the proper precautions to remedy the hazard. There may be circumstances, in which the ship repairer's judgment is so improvident that the vessel owner, if it has actual knowledge, is required to overrule the ship repairer's judgment and correct the hazard. Id. However, it is clear that the shipowner may rely on the ship repairer to perform the repair operations with reasonable care, and has no duty to anticipate inaction or carelessness of a ship repairer. Polizzi v. M/V Zephyros II Monrovia, 860 F.2d 147, 149 (5th Cir.1988); Morris v. Compagnie Maritime des Chargeurs Reunis, 832 F.2d 67, 71 (5th Cir.1987), cert. denied, 485 U.S. 1022, 108 S.Ct. 1576, 99 L.Ed.2d 891 (1988).
Plaintiff contends that the evidence showed that Offshore Express had actual knowledge that it could not rely on Main Iron Works to take precautions to protect plaintiff from this slipping hazard. Here, plaintiff focuses on the testimony indicating that as part of the repair contract, there was no authorization given to Main Iron Works to "redesign the vessel" to ensure the repair operations could be carried out safely. Thus, plaintiff argues that Offshore Express was negligent in failing to install the suggested safety devices because it knew Main Iron Works would not install handrailing, grated flooring or temporary scaffolding to protect against the danger of slipping on the slippery, inclined floor.
The evidence, however, established that Main Iron Works had exclusive control over the tank and, as part of its repair contract, was responsible for gas-freeing the tank to ensure it was safe for its employees to enter. Further, the uncontradicted testimony of Main Iron Works' employees established that Main Iron Works had the requisite equipment available to its workers to protect against the hazard of slipping, such as shoes with special oil resistant, skid proof soles, ropes and temporary scaffold boards. Main Iron Works' president, Leroy Molaison, testified that 12" scaffold boards, which could be sent into the manhole and laid across the framing of the vessel to walk on, were available to the employees. There is nothing in this record to suggest that Offshore Express had knowledge that Main Iron Works would not equip it employees with safety gear in carrying out the repair operation.
With the exception of the plaintiff, all of the witnesses on both sides testified that they had been in thousands of vessels, including the insides of cargo fuel tanks, and had not seen one cargo fuel tank outfitted with handrails or grated flooring. Plaintiff testified that he had seen handrails and steel grating in some vessels, but admitted he had not worked inside many cargo fuel tanks. Additionally, with respect to the installation of non-skid paint, an expert in marine safety testified that diesel would absorb into the abrasive material, making it impossible to gas-free the tank. For the purposes of thoroughly cleaning the tank, he stated that a smooth surface is essential.
Although the question of whether a shipowner breached any duty owed to the plaintiff is clearly a factual one under admiralty law, Martinez v. Korea Shipping Corp., Ltd., 896 F.2d 1205, 1208 (9th Cir.1990), we are constrained to reverse the jury's finding of liability, and the trial court's application of the JNOV standard to this case. Construing all of the evidence in the light most favorable to plaintiff, we find that no reasonable jury should have found Offshore Express liable under any theory of liability enunciated in Scindia. The jury should have found that the responsibility to *960 protect plaintiff from the slipping hazard lay exclusively with the ship repairer and that the shipowner reasonably relied on the ship repairer to provide the proper precautionary measures to protect against the obvious danger of slipping inside the cargo tank. Under this factual circumstance, as far as the shipowner's liability is concerned, the danger of slipping inside the cargo fuel tank presented only a "limited and accepted hazard." See Hill v. Texaco, 674 F.2d at 452. By sending the plaintiff into the fuel tank without assuring that he had the proper safety devices to protect against the hazard of slipping, such as a harness, rope or wooden boards, the ship repairer exposed its employee to an unreasonable hazard. See Meserole v. M/V Fina Belgique, 736 F.2d 147 (5th Cir.1984); Morris v. Compagnie Maritime Des Chargeurs Reunis, 832 F.2d at 71.
Based on the foregoing, we reverse the judgment holding defendant liable for failing to provide a safe work place. All costs of these proceedings are assessed to plaintiff.
REVERSED AND RENDERED
LANIER, J., concurs and assigns reasons.
LANIER, Judge, concurring.
I concur in the result. I do not agree with the statement in the majority opinion that a trial judge's action in granting a JNOV on a question of fact is governed by the abuse of discretion standard of review in a Louisiana appellate court. Further, this statement is dictum because the JNOV herein was denied. The jury decided the essential facts in this case, not the trial judge. The jury's factual finding on liability was manifestly erroneous-clearly wrong and should be reversed.
The Longshoreman's and Harbor Worker's Compensation Act (LHWCA), 33 U.S. C.A. § 901 et seq., is Congress' exercise of its legislative authority to allocate admiralty jurisdiction. Federal jurisdiction over Section 905(b) claims is based upon the general maritime law. 28 U.S.C.A. § 1333(1); Russell v. Atlantic & Gulf Stevedores, 625 F.2d 71 (5th Cir.1980). State courts have concurrent jurisdiction with federal courts to hear LHWCA cases by virtue of the "saving to suitors" clause of 28 U.S.C.A. § 1333(1). Bynum v. Patterson Truck Lines, Inc., 655 F.2d 643 (5th Cir.1981); Allen v. Keeney, 442 So.2d 1171 (La.App. 1st Cir.1983), writ denied, 445 So.2d 1232 (La.1984). The LHWCA supplants the "general maritime law" in cases where it governs. Allen v. Keeney, 442 So.2d at 1176. Since jurisdiction over LHWCA claims is based upon general maritime law, there is generally no right to a trial by jury. Bynum v. Patterson Truck Lines, Inc., 655 F.2d at 644; Russell v. Atlantic & Gulf Stevedores, 625 F.2d at 72. However, where a LHWCA claim is brought in federal court under diversity of citizenship or in state court under the "saving to suitors" clause, trial by jury is allowed.[1]Bynum v. Patterson Truck Lines, Inc., 655 F.2d at 645; Lavergne v. Western Company of North America, Inc., 371 So.2d 807 (La.1979).
Louisiana appellate courts have jurisdiction to review questions of law and fact in all civil cases. La.Const. art. 5, §§ 5 and 10. Federal appellate courts only have jurisdiction to review questions of law in civil jury trials. U.S. Const. amend VII. In federal court, when a civil jury has made factual findings upon correct instructions, the only inquiry on review is whether there was sufficient evidence to sustain these findings. Granberry v. O'Barr, 866 F.2d 112 (5th Cir.1988); Nunez v. Superior Oil Company, 572 F.2d 1119 (5th Cir.1978). When a judge has made factual findings, these findings are reviewed under "the clearly erroneous standard". Fed.R.Civ.P. *961 52(a); Musial v. A & A Boats, Inc., 696 F.2d 1149 (5th Cir.1983). In Louisiana, factual findings are reviewed under the manifestly erroneous-clearly wrong standard, unless the factual finding has been interdicted by error. Rosell v. Esco, 549 So.2d 840 (La.1989). In maritime actions brought in state court, federal substantive law applies; but where the result is not substantially affected, the procedural law of the forum applies. Lavergne v. Western Company of North America, Inc., 371 So.2d at 810; Cason v. Diamond M. Drilling Company, 436 So.2d 1245 (La.App. 1st Cir.), writ denied, 441 So.2d 1221 (La.1983). Thus, state courts are not required to apply Rule 52(a) (the clearly erroneous standard of review), a rule of federal civil procedure, to their own systems for reviewing factual determinations of trial judges. Icicle Seafoods, Inc. v. Worthington, 475 U.S. 709, 106 S.Ct. 1527, 89 L.Ed.2d 739 (1986); Daigle v. Coastal Marine, Inc., 488 So.2d 679 (La.1986); Simmons v. Hope Contractors, Inc., 517 So.2d 333 (La.App. 1st Cir.1987), writ denied, 518 So.2d 510 (La.1988). State courts apply their own system for reviewing factual determinations of jurys in general maritime law (LHWCA) cases. Simmons v. Hope Contractors, Inc., 517 So.2d at 336.
The issue in this case is whether the vessel owner should have intervened because the repairer's failure to cure the hazard was "obviously improvident". This, as well as the question of negligence in a maritime case, is a question of fact for the jury. Randolph v. Laeisz, 896 F.2d 964 (5th Cir.1990). The jury herein decided this factual issue adversely to the defendant. The defendant requested a JNOV which was denied by the trial judge. Thus, the factual issue for appellate review is whether the jury was manifestly erroneous-clearly wrong in its decision. It is unnecessary for us to review the trial judge's ruling which denied the JNOV because that ruling did not establish the facts in this case. There is nothing in the record to suggest that Offshore Express (the vessel owner) had actual knowledge that Main Iron Works (the vessel repairer) could not properly repair the vessel or remedy the hazard of slipping during repairs. Offshore Express was reasonable in relying on Main Iron Works to perform the repairs with reasonable care. The jury was manifestly erroneous-clearly wrong in finding otherwise.
For the foregoing reasons, I respectfully concur.
NOTES
[1] Act No. 147 of 1988, effective September 9, 1988, amended La.C.C.P. art. 1732 to remove the right to a jury trial in general maritime cases brought in state court under the "saving to suitors" clause. This amendment was not applicable to this case because the suit was filed before the effective date of the amendment, and this amendment is not retroactive. See Pope v. Penrod Drilling Company, 548 So.2d 37 (La.App. 3rd Cir.), writ not considered, 551 So.2d 623 (La. 1989); Ford v. McDermott, Inc., 543 So.2d 1135 (La.App. 1st Cir.1989); Gauchet v. Chevron U.S.A., Inc., 541 So.2d 272 (La.App. 4th Cir. 1989).